UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
OLE MEDIA MANAGEMENT, L.P.,                                             :
                                                                        :      12 Civ. 7249 (PAE)
                                               Plaintiff,               :
                                                                        :      OPINION & ORDER
                         -v-                                            :
                                                                        :
EMI APRIL MUSIC, INC., and EMI BLACKWOOD                                :
MUSIC, INC.,                                                            :
                                                                        :
                                               Defendants.              :
                                                                        :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Defendants EMI April Music, Inc. and EMI Blackwood Music, Inc. (collectively, "EMI") bring this motion to dismiss or, in the alternative, stay plaintiff Ole Media Management, L.P. ("Ole")'s breach of contract action pending the outcome of a previously-filed action in an Ontario, Canada court that substantially overlaps with the issues raised here. For the reasons that follow, the Court grants EMI's motion for a temporary stay of this case but denies its motion to dismiss.

**I.      Background**

     **A.      Facts**[1]

       Plaintiff Ole is a partnership made up of Ole Media Management (GP) L.P. and Ole Media Management (GP) Inc., which are Canadian entities with their principal places of business in Toronto, Ontario. Am Compl. ¶ 1. Ole is one of the world's largest independent music

---

[1] The facts related herein are drawn from Ole's amended complaint ("Am. Compl."), Dkt. 21, and its opposition brief ("Ole Br."), Dkt. 20. For the purpose of deciding EMI's motion to dismiss, the Court accepts as true the facts alleged by Ole. *See Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 91 n.1 (2d Cir. 2006) (citation omitted).

publishers. *Id.* ¶ 7; Ole Br. 2.  Defendants are both Connecticut corporations with their principal places of business in New York, New York.  Am. Compl. ¶¶ 2–3.

Two sets of agreements to which Ole and EMI are parties form the background to this dispute.  First, on or about January 1, 2007 and March 21, 2007, Ole and EMI entered into two exclusive administration agreements (collectively, the "Administration Agreements").  Am. Compl. ¶ 8; Ole Br. 3.  Under those agreements, EMI assumed a duty to administer certain of Ole's compositions.  Am. Compl. ¶ 15; Ole Br. 3.  That duty included collecting royalties and all monies payable to Ole for the compositions covered by the Administration Agreements, and providing regular accountings to Ole.  Am. Compl. ¶¶ 16–17; Ole Br. 3.

Second, on or about February 23, 2007 and March 21, 2007, Ole entered into two asset purchase agreements (collectively, the "Asset Purchase Agreements") with EMI Entertainment World, Inc., an affiliate of EMI.  Am. Compl. ¶ 9; Ole Br. 2.  Those agreements transferred a number of musical compositions to Ole.  Am. Compl. ¶ 10; Ole Br. 2.

Disputes have arisen regarding both sets of agreements.  As to the Administration Agreements, according to Ole, after EMI began administering the compositions covered thereby, the income Ole earned from those compositions declined significantly.  Am. Compl. ¶ 18; Ole Br. 3.  Ole then engaged an accounting firm to examine EMI's books and records, Am. Compl. ¶ 20; Ole Br. 3, as provided for in the Administration Agreements, Am. Compl. ¶ 19.  Ole asserts that the audit performed by that firm revealed "vast and systematic underpayments" to Ole.  Am. Compl. ¶ 20; Ole Br. 3.  Additionally, Ole claims, even after it provided EMI with its objections, EMI has failed to cure, and continues to be in breach of the Administration Agreements.  *See* Am. Compl. ¶¶ 21–39.  In this lawsuit (the "New York action"), Ole seeks more than $800,000 in compensatory damages for EMI's breach of contract.

As to the Asset Purchase Agreements, Ole and EMI Entertainment World, Inc. dispute which compositions and other musical assets were included in Ole's purchases. Ole therefore has sought "a reformation of the Asset Purchase Agreements to fully encompass the assets which rightfully belong to Ole" by filing suit in Canada against EMI Entertainment World, Inc. and EMI (the "Canada action"). Am. Compl. ¶¶ 11–12. That suit was filed on June 20, 2011. *Id.* ¶ 11.

### B. Procedural History

On September 26, 2012, Ole filed the New York action against EMI, claiming breach of the Administration Agreements. Dkt. 1. On February 15, 2013, EMI filed a motion to dismiss, Dkt. 10, an accompanying memorandum of law in support of its motion to dismiss ("EMI Br."), Dkt. 12, and the Declaration of Bruce D. Scavuzzo ("Scavuzzo Decl.") and accompanying exhibits,[2] Dkt. 11. The Court held an initial conference with the parties on May 10, 2013. *See* Dkt. 16. Per the parties' request, Ole's opposition to EMI's motion to dismiss, or its amended complaint, was due 14 days after that conference. *See* Dkt. 15, 19. On May 24, 2013, Ole filed both the Amended Complaint, Dkt. 21, and its brief in opposition to EMI's motion to dismiss, Dkt. 20. On May 31, 2013, EMI filed a reply to Ole's opposition ("EMI Reply Br.").[3] Dkt. 22.

## II. Discussion

EMI argues that the Court should dismiss or, in the alternative, stay the New York action in deference to the Canada action regarding the Asset Purchase Agreements. According to EMI,

---

[2] Although some of these exhibits may properly be considered for the purposes of this motion as documents incorporated by reference in the complaint or "integral" thereto, *see Chambers v. Time Warner, Inc.*, 262 F.3d 147, 152–53 (2d Cir. 2002) (citation omitted), the Court does not rely on any of those exhibits in this Opinion.

[3] In accordance with the parties' wishes and after its own independent review of the documents, the Court has treated EMI's motion and supporting papers as addressed to Ole's Amended Complaint. *See* Dkt. 23–24.

Ole's claims in the instant action depend upon resolution of the disputes surrounding the Asset Purchase Agreements that are being litigated in a Canadian court. EMI contends that much of the dispute between Ole and EMI about the Administration Agreements is predicated upon Ole's mistaken belief that it was owed royalties in connection with compositions that it did not in fact purchase as part of the Asset Purchase Agreements. Therefore, EMI states, the issue presently being litigated in Canadian court is foundational to the claims of the New York action, and Ole's New York action represents an attempt to litigate its claims in a separate venue, thus creating piecemeal and duplicative litigation.

Ole counters that the contractual issues presented here are properly decided in this Court, and now. According to Ole, the two actions do not overlap so substantially as to justify a dismissal or stay. Ole asserts that the issues presented here are independent of those presented in the Canadian litigation.

### A.   International Comity and the "Prior Action Pending" Doctrine

A court has the inherent power to dismiss or stay an action based on the pendency of a related proceeding in a foreign jurisdiction. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *Quanzhou Joerga Fashion Co. v. Brooks Fitch Apparel Grp., LLC*, No. 10 Civ. 9078 (MHD), 2012 WL 4767180, at *11 (S.D.N.Y. Sept. 28, 2012); *Argus Media, Ltd. v. Tradition Fin. Servs. Inc.*, No. 09 Civ. 7966 (HB), 2009 WL 5125113, at *6 (S.D.N.Y. Dec. 29, 2009); *MasterCard Int'l Inc. v. Argencard Sociedad Anonima*, No. 01 Civ. 3027 (JGK), 2002 WL 432379, at *8 (S.D.N.Y. Mar. 20, 2002); *Evergreen Marine Corp. v. Welgrow Int'l, Inc.*, 954 F. Supp. 101, 103 (S.D.N.Y. 1997). This "prior action pending" doctrine recognizes the "principles upon which international comity is based:  the proper respect for litigation in and the courts of a sovereign


nation, fairness to litigants, and judicial efficiency." *Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006) (Lynch, J.).

At the same time, federal courts must be mindful of their "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). As Ole point outs, the Second Circuit has stated that "[t]he task of a district court evaluating a request for dismissal based on a parallel foreign proceeding is not to articulate a justification *for* the exercise of jurisdiction, but rather to determine whether exceptional circumstances exist that justify the surrender of that jurisdiction." *Royal & Sun Alliance*, 466 F.3d at 93 (citation omitted). The Second Circuit has articulated five non-exclusive factors that courts should consider. These include: the similarity of the parties and issues; the interests of judicial economy; the order in which the actions were filed; the adequacy of the alternative forum; and the convenience of, and potential prejudice to, either party. *See id.* at 94; *Quanzhou Joerga Fashion*, 2012 WL 4767180, at *11; *Argus Media*, 2009 WL 5125113, at *6; *MasterCard Int'l*, 2002 WL 432379, at *8; *Cont'l Time Corp. v. Swiss Credit Bank*, 543 F. Supp. 408, 410 (S.D.N.Y. 1982).

### B. Assessment of the Five Factors

The parties agree that these factors primarily govern the analysis here, although they assess the factors differently. In the Court's view, a balancing of these factors favors, as EMI urges, a stay of the New York action pending the outcome of the Canada action.

### 1. Similarity of Parties and Issues

#### a. Parties

The defendants in this case are also defendants in the Canada action. Ole argues that the parties in the two cases are "similar, but not identical, as EMI Entertainment . . . is not a named defendant in this action." Ole Br. 6.

Ole is correct that the parties are not identical. They need not be, however, for this factor to favor EMI; the relevant test is whether the parties are substantially similar. *See Royal & Sun Alliance*, 466 F.3d at 94–95 ("For two actions to be parallel, the parties in the actions need not be the same, but they must be substantially the same . . . ."); *Argus Media*, 2009 WL 5125113, at *6 (parties sufficiently similar to justify a stay where "both actions involve Defendants' (*and/or their affiliates'*) right to copy and distribute plaintiff's copyrighted work") (emphasis added); *MasterCard Int'l*, 2002 WL 432379, at *9 ("There need not be strict identity between the parties and issues in two actions in order to defer to a prior pending foreign action."); *Credicom N.V. v. Colony Credicom L.P.*, No. 99 Civ. 10486 (MBM), 2000 WL 282968, at *2 (S.D.N.Y. Mar. 16, 2000) (difference "not material" where additional defendant in one of parallel actions is parent corporation to one of defendants in both actions); *MLC (Bermuda) Ltd. v. Credit Suisse First Boston Corp.*, 46 F. Supp. 2d 249, 251–52 (S.D.N.Y. 1999) ("substantial" and "potentially complete" identity of parties in both actions sufficient to favor dismissal of one); *Advantage Int'l Mgmt., Inc. v. Martinez*, No. 93 Civ. 6227 (MBM), 1994 WL 482114, at *4 (S.D.N.Y. Sept. 7, 1994) ("All that is required in this Circuit is that the parties and issues be sufficiently similar so that when a judgment issues from the foreign court, res judicata will apply."); *Herbstein v. Bruetman*, 743 F. Supp. 184, 188 (S.D.N.Y. 1990) ("[C]omity requires that the parties and issues in both litigations are the same or sufficiently similar, such that the doctrine of *res judicata* can

be asserted."). Moreover, EMI Entertainment *is* a named defendant in the Canadian action; as such, staying this litigation pending resolution of the one in Canada in no way excludes a party here. The dissimilarity in parties to the two lawsuits, if anything, supports staying this motion, because the defendants in this action form a subset of those in the Canadian action. *See Palm Bay Int'l v. Marchesi Di Barolo S.P.A.*, 659 F. Supp. 2d 407, 413 (E.D.N.Y. 2009) (where parties "almost identical," and additional party is named in foreign action but not in U.S. action, factor "weighs in favor of dismissal"); *cf. MLC (Bermuda)*, 46 F. Supp. 2d at 251–52, 254 (despite additional party's absence from foreign suit, domestic action dismissed "contingent upon [his] consent to jurisdiction" in foreign court).

The parties to the two actions here are clearly sufficiently similar. This factor thus weighs in favor of dismissing or staying the action.

### b. Issues

As to the issues they present, the two actions diverge to a somewhat greater degree. Ole rightly emphasizes that there is a difference between the agreements under which relief is sought here and the agreements at issue in the Canada action. *See* Ole Br. 6–7. On the other hand, EMI argues that "[t]he determination of th[e] issue [presented by the Canada action] will resolve a major portion of the claims in this action." EMI Br. 20.

At this stage, it is clear that there is substantial overlap between the issues, although not complete identity. It is also clear that the determination (in the Canadian lawsuit) as to which compositions Ole purchased under the Asset Purchase Agreements will have significant bearing, and *res judicata* effect, on the dispute regarding the Administration Agreements at issue here. The similarity of the issues here therefore warrants a stay, but not a dismissal, of the New York action. *See Palm Bay Int'l*, 659 F. Supp. 2d at 414 (where domestic action included an issue not

presented by foreign dispute, dismissal of domestic action not appropriate).  As in *Palm Bay*, "one of the principal issues in this litigation will not be addressed in the [foreign] action." *Id.* To dismiss this action in deference to the Canadian litigation would therefore be inappropriate.[4] A stay, on the other hand, will not prevent the additional issue from being litigated before this Court.  Instead, it will permit an underlying dispute to be resolved first, one which is likely— depending on which party's assessment of the degree of overlap between the issues bears out[5]— to prove either "instructive on the ultimate resolution" of this action, *see Argus Media*, 2009 WL 5125113, at *6, or largely dispositive.

### 2.  Interests of Judicial Economy

The interests of judicial economy clearly counsel in favor of, at the least, a stay of this action.  As noted, the sole issue raised in the Canada action is a key issue that will undoubtedly affect, likely significantly, the resolution of this action.  Ole's statement that "the issues regarding the Asset Purchase Agreements will be decided by only one court (whichever court is most efficient)" and that decision will bind the other jurisdiction, *see* Ole Br. 9, tacitly recognizes that, in the absence of a stay or dismissal, for at least a time, both courts would be engaged in the same task.  Ole thus gives short shrift to the waste of judicial resources that would be expended

---

[4] Courts have nevertheless dismissed cases such as this one where the issue presented in the domestic action could have been, or still could be, asserted in the foreign action, even if it has not yet been.  *See, e.g.*, *MLC (Bermuda)*, 46 F. Supp. 2d at 252–53; *Advantage Int'l Mgmt.*, 1994 WL 4782114, at *2.  This Court declines to do so, out of respect for Ole's legitimate choice to have a court in New York decide a contract dispute as to which, the parties agree, New York choice of law applies.  *See* Ole Br. 12; EMI Br. 22 n.9.

[5] *Compare* Ole Br. 7 ("While the issue regarding the Asset Purchase Agreements will have some effect on this litigation, the majority of the individual claims in this case relate to compositions which both parties agree are owned by Ole."), *with* EMI Reply Br. 5 n.8 (describing that statement as "Ole flat out misrepresent[ing] its own claims" and stating that "the two most significant claims in the Audit Report and in the New York Action are for . . . [i]ncome . . . based on songs that are not listed on the Schedules to the Asset Purchase Agreement (or any other relevant documents.)").

without a stay. A stay of this action would advance the interest of judicial economy by avoiding duplicative litigation of an identical issue.

### 3. Adequacy of Alternative Forum

Neither party disputes that full and adequate relief is available in the Canadian courts as to the claims asserted therein. Ole's assessment of this factor therefore relies solely on the fact that the Administration Agreements are not at issue in the Canadian action. For the same reasons that the similarity of the issues merits a stay, but not a dismissal, of this action, the adequacy of the alternative forum also counsels in favor of that course.

### 4. Convenience of, and Potential Prejudice to, Either Party

EMI vigorously argues that it is both inconvenienced and prejudiced by having to "defend against simultaneous actions involving identical issues and parties," exposing it to the "risk of inconsistent judgments and duplicative discovery." EMI Br. 24. Conversely, it argues that Ole will suffer no prejudice in the event of a dismissal or stay of this action because Ole "*chose* to litigate at least part of this dispute in Canada and could have addressed all issues in one suit." *Id.* (emphasis in original).

Ole counters that it will suffer prejudice. Ole argues that, were this Court to dismiss the New York action, Ole could not obtain relief for EMI's alleged breach of the Administration Agreements. Ole Br. 11–12. Ole also argues that "this action is likely to be resolved more quickly tha[n] the Canadian litigation and resolving this matter more quickly is in the interest of both parties. Once this dispute is resolved, the parties can know where they stand and continue with their business relationship." Ole Br. 8.

The Court's decision to stay, rather than dismiss, the action obviates Ole's first claim of prejudice: Ole will be able to obtain relief for the alleged breach of the Administration

Agreements once the litigation over the Asset Purchase Agreements has been resolved. The second argument is weak: Ole has chosen to file these actions in two separate courts, and to file the first in Canadian court. It is disingenuous for it to argue now that that court will proceed too slowly on the claims it filed there. Had Ole so believed, it could initially have filed the two actions in this Court, or, upon filing here, sought to withdraw the Canada action and consolidated both claims before this Court. Ole took none of these steps. It may not credibly claim that resolution of the Canada action will be unacceptably delayed.

There is no doubt that *EMI* is significantly inconvenienced by allowing both actions to proceed, given the partial duplication among them, notwithstanding Ole's claim that EMI will in fact *benefit* from "litigating these matters on its home territory." Ole Br. 8. But EMI's motion for stay aims to reduce that inconvenience.

The convenience and prejudice factor thus strongly supports the Court's staying this action.

### 5. Temporal Sequence of the Actions

Unlike the other factors which the Court has addressed, the order in which the cases were filed does not point clearly in favor of a stay (or a dismissal). EMI argues that the fact that Ole filed the Canadian action nearly 14 months before it filed this lawsuit favors a dismissal or a stay. Ole points out that no discovery has yet taken place in the Canada action, and that this factor should be measured not only by the order in which the actions were filed, "but rather in terms of how much progress has been made in the two actions." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 21 (1983)). Ole asserts that little progress has been made in the Canada action, and discovery has not yet begun. Ole Br. 10.

In the Court's assessment, this factor is neutral or close to it.  The Canadian litigation has not reached a significantly advanced stage for this factor to bolster EMI's argument in any substantial way.

### C.     Other Relevant Factors

Because a court's "decision to abstain from exercising jurisdiction based on the existence of parallel litigation 'does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . as they apply in a given case,'" *Royal & Sun Alliance*, 466 F.3d at 94 (citing *Moses H. Cone*, 460 U.S. at 16), the Court also considers whether any other factors are relevant.

Ole argues that "the fact [that] the Administration Agreements require the application of New York law counsels for the present action to move forward." Ole Br. 12.  This fact indeed counsels against dismissing the action.  But it does not counsel against a stay of the New York action pending resolution of the Canada action.  In due course, once the Canada action has run its course, this Court, not a Canadian court, will apply New York contract law.

Evaluating the factors as a whole, the Court concludes that they strongly favor staying this action in deference to the pending litigation in Canadian court.  Even where courts have declined to dismiss an action pending a prior parallel action in a foreign court, a stay has often been viewed as the appropriate intermediate measure.  *See, e.g.*, *Royal & Sun Alliance*, 466 F.3d at 96 ("[A] measured temporary stay need not result in a complete forfeiture of jurisdiction.  As a lesser intrusion on the principle of obligatory jurisdiction, which might permit the district court a window to determine whether the foreign action will in fact offer an efficient vehicle for fairly resolving all the rights of the parties, such a stay is an alternative that normally should be

considered before a comity-based dismissal is entertained."); *Quanzhou Joerga Fashion*, 2012 WL 4767180, at *12; *Argus Media*, 2009 WL 5125113, at *6.

## CONCLUSION

For the foregoing reasons, Ole's breach of contract action before this Court is stayed. The Court remains concerned, however, that the litigation between Ole and EMI proceed efficiently; to that end, the Court directs the parties to submit a joint status update via letter every 60 days from the date of this Opinion.[6] The Court will revisit the stay should it become necessary.

The Clerk of Court is directed to terminate the motion pending at docket number 10, and to place this case on the suspense docket.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: June 10, 2013
New York, New York

---

[6] Ole's Amended Complaint states that "[i]n the Canadian litigation the parties are unable to be before the Court until July 4, 2013 at which time Ole will seek a discovery plan." Am. Compl. ¶ 13. As such, the due date of the parties' first status update letter permits sufficient time for the parties to report on the next steps taken in the Canadian litigation.